IN THE UNITED STATES DISTRICT COUR
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

KESSLYN BRADE STENNIS,
    10517 Gentian Court
    Upper Marlboro, Maryland 20772

        Plaintiff,

    v.                                                Civil Action No.
                                                      Jury Trial Requested

BOWIE STATE UNIVERSITY,
    14000 Jericho Park Road
    Bowie, Maryland 20715-9465

        Defendant.

COMPLAINT

**NOW COMES** Plaintiff, Kesslyn Brade Stennis, by and through her undersigned counsel,

and, pursuant to Fed. R. Civ. P. 8 and 10, files this Complaint for damages set forth as follows:

JURISDICTION AND VENUE

1.      This Complaint is authorized and instituted pursuant to Title VII of the Civil Rights Act

of 1964 ("Title VII"), 42 U.S.C. § 2000e-3 and Title IX of the Civil Rights Act of 1964 ("Title

IX"), 20 U.S.C. § 1681(a) and, as this Complaint asserts claims arising under the laws of the United

States, this Court has original jurisdiction over those claims.  Further, Plaintiff has alleged a claim

arising under state law, under the Maryland Fair Employment Practices Act ("FEPA"), Md. Code

Ann. State Gov't. Art. §20-606, and, since that claim is factually inter-related with Plaintiff's

claims arising under federal law, this Court should assert its pendent jurisdiction over such claim.

2.      Venue is proper in this judicial district as the claims alleged in this Complaint occurred

within this judicial district and Defendant is a government employer that is subject to the

jurisdiction of this Court.

1

3.      Prior to bringing this action, Plaintiff timely filed an administrative charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Maryland Commission on Civil Rights ("MCCR") alleging unlawful employment practices by Defendant, EEOC Charge No. 531-2014-01212C.  More than 180 days have elapsed since the filing of that administrative charge of discrimination without the Equal Employment Opportunity Commission ("EEOC") not having issued a finding regarding the matters alleged in that administrative charge of discrimination.  This action is being brought within three years of Plaintiff's having been discriminated against because of her sex by an educational institution receiving federal assistance.

**PARTIES**

4.      At all times relevant to this Complaint, Plaintiff, who is female, was an "employee" of Defendant, as defined by Title VII and a "person" as defined by Title IX and a resident of Prince George's County and the State of Maryland.

5.      Defendant Bowie State University ("BSU") is a constituent institution of the University System of Maryland ("USM") and it operates under the jurisdiction of USM's Board of Regents. It is an instrumentality of the State of Maryland.  Md. Code Ann. Educ. Art. §§ 12-101(b)(6)(vi) and 12-102(a). It is a regional institution that provides a broad range of undergraduate and professionally-oriented graduate programs. At all times relevant to this Complaint, Defendant was an "employer" as defined in Title VII and an education program or activity receiving federal financial assistance within the meaning of Title IX.   Defendant is an "employer" as defined by Md. Code Ann. State Gov't. Art. § 20-601(d).

## ADMINISTRATIVE PROCEDURES

6.      Plaintiff timely executed her Charge of Discrimination against the Defendant and filed it with the EEOC on or about April 6, 2014.  It was assigned Charge No. 531-2014-01212C and was dual-filed with the EEOC and the MCCR.

7.      The MCCR is recognized as a deferral agency by the EEOC.

8.      The discriminatory acts complained of in this Complaint began in May 2013.  Any applicable statutes of limitation were tolled during the pendency of the investigation of the administrative charge of discrimination.  More than 180 days have elapsed since the filing of the administrative charge of discrimination with the MCCR.

9.      Plaintiff therefore invokes her statutory right to sue in that she has satisfied all administrative and judicial prerequisites to the institution of this action and has elected to bring this action in this Court.

## STATEMENT OF FACTS

10.      At all times relevant to this Complaint, Plaintiff had a property interest in her position.

11.      Between February 2009 and August 15, 2014, Plaintiff worked at BSU as an Assistant Professor in the Department of Social Work ("DSW"), within BSU's College of Professional Studies.

12.      Plaintiff's immediate supervisor was Dr. Andre Stevenson, the DSW Department Chair.

13.      Throughout Plaintiff's tenure at BSU, Plaintiff always was rated as at least a successful performer.

14.      Under BSU's policies and procedures, Plaintiff had up to seven years to apply for and obtain tenure.

15.    Twice during her tenure, she experienced pregnancy-related disabilities and was approved for pregnancy-related and family and medical leaves associated with her pregnancies and births of her children.  Such leaves of absence were supported by Dr. Stevenson.

16.    Throughout her tenure at BSU, Plaintiff was active and vocal in advocating for the concerns of women and minority students in the Social Work program.

17.    During Plaintiff's Spring 2013 evaluation, conducted on May 5, 2013, Plaintiff expressed concern to Dr. Stevenson about voiced student concerns about their treatment by certain faculty. Dr. Stevenson directed Plaintiff to go to the Social Work Club and find out "what they thought of him."

18.    Plaintiff did as she was directed by Dr. Stevenson.  She attended a May 23, 2013 retreat of the Social Work Club.  There, the students vehemently criticized Dr. Stevenson, including raising concerns about unfair discrimination shown to them because of their gender and sexual orientation by Dr. Stevenson and other faculty members.

19.    Also in Spring 2013, Luis Valesquez, an openly gay student in the DSW asked about the DSW offering a course on homosexuality.  Plaintiff discussed this with Dr. Stevenson and he rejected the idea, emphatically stating that there would be no such courses "on his watch."

20.    During Summer 2013, Plaintiff typed up the concerns that had been expressed at the Spring meeting of the Social Work Club and prepared an "Assessment of Dr. Andre Stevenson, Chair" representing the Social Work Club's comments about Dr. Stevenson that Dr. Stevenson had directed Plaintiff to obtain ("Assessment").

21.    In August 2013, Plaintiff presented the Assessment to the Social Work Club executive board.  The board approved the document, including the following identified "Threat" to the organization and the DSW:

4

*"Favoritism:  Students [gay and female] feel that there is clear evidence of unfair discrimination and favoritism shown to them by the Chair [Andre Stevenson] and specific faculty members.  If not addressed, such actions could warrant a decrease in SOWK majors, more clearly seen faculty discord, and even legal actions (i.e. Law suits)."*

22.	In mid-August 2013, Plaintiff forwarded the Assessment to Dr. Stevenson.  He reacted extremely negatively and, from that time, acted extremely hostilely toward Plaintiff.  Dr. Stevenson removed Plaintiff as faculty advisor for the Social Work Club and discontinued support toward professional development and tenure.	.

23.	Immediately after submitting the Assessment, Plaintiff began receiving threatening and intimidating e-mails from Dr. Stevenson.  Those e-mails continued throughout Fall 2013.

24.	Plaintiff was summoned to a meeting on September 11, 2013, where she was questioned extensively by Dr. Stevenson and the Dean of the College of Professional Studies, Dr. Jerome Schiele.  At that meeting, Plaintiff was counseled about the Assessment and her credibility was questioned.

25.	Following that meeting, Plaintiff met with Ms. Elizabeth Stachura about her meeting with Dr. Stevenson and Dean Schiele.  Ms. Stachura offered no meaningful solution and took no action to ensure that the retaliatory and intimidating actions by Dr. Stevenson and Dean Schiele would cease.

26.	On October 11, 2013, Plaintiff submitted her tenure application.  Dr. Stevenson faulted her for submitting a "disorganized" dossier, even though Plaintiff clearly had submitted a complete, professional master product in accordance with BSU's tenure guidelines.

27.	In Fall 2013, at a Dean's Faculty Advisory Committee meeting, Plaintiff expressed concerns that a number of students and faculty had concerns similar to the ones that Plaintiff previously had

raised in the Assessment but were afraid to present them for fear of reprisal. Dr. Stevenson was dismissive of Plaintiff's observations.

28.    In Fall 2013, Dr. Stevenson continued to display the same animus towards Plaintiff that arose from the time that she had presented the Assessment, including erecting barriers to Plaintiff's tenure application by raising inaccurate claims about her professionalism and her advisement of students. Even though Plaintiff demonstrated that those claims were inaccurate, Dr. Stevenson continued to oppose her tenure application.

29.    October 7, 2013, Plaintiff received a very disturbing and disrespectful e-mail from Dr. Stevenson. The email was written in a very demeaning and inappropriate manner, and continued to falsely portray a continuing issue regarding advisement.

30.    That email confirmed Dr. Stevenson's retaliatory animus and his intent to use the issue of advisement to thwart Plaintiff's tenure application. Plaintiff was extremely concerned because she had few details and, based upon the names that had been furnished by Dr. Schiele, it was clear that there had been no mis-advisement. It appeared that Dr. Stevenson's concerns about advisement were baseless.

31.    After receiving that email, Plaintiff immediately met with Ms. Stachura. She expressed her emotional distress and her concern over the mounting paper trail that was accumulating after she had expressed the concerns of the gay and female students and her championing their concerns about unlawful discrimination against them because of their gender and sexual orientation. She also expressed her concern for the students who were continuing to be mis-treated, particularly those who had been members of the Social Work Club Board who had participated in the SWOT assessment exercise. Ms. Stachura recommended that she include Dean Schiele in the discussion. When Plaintiff informed Ms. Stachura that Dr. Schiele had already been informed and had been

copied on Dr. Stevenson's October 7, 2013 email. Ms. Stachura seemed surprised. Plaintiff was advised by Stachura to consider approaching Dr. Stevenson from a different perspective, asking him to review her performance and provide feedback on what she could do to improve, which the Plaintiff did in a subsequent meeting with Stevenson. Following the meeting, Plaintiff heard nothing more from Ms. Stachura about her concerns of unlawful retaliation.

32.     Subsequently, Plaintiff scheduled numerous meetings, including meetings with the President of the ART Committee to express her concerns surrounding receiving a fair tenure review process.  She also scheduled a meeting with Dean Schiele to discuss her continuing concerns with Dr. Stevenson.  Dr. Schiele appeared unsympathetic and ambivalent about the seriously hostile retaliatory work environment that had been created and nurtured by Dr. Stevenson.

33.     In November 2013, Plaintiff's husband, independently of Plaintiff, called the BSU's President's office regarding concerns that he had about how the DSW had handled issues related to a BSU student that was receiving assistance from Plaintiff's family.

34.     On November 8, 2013, Dean Schiele met with Plaintiff to explain the tenure process and to express his displeasure about her husband's telephone call, insinuating that Plaintiff somehow had influenced or instigated that call.  Dean Schiele told Plaintiff that he found the circumstances of the call "suspicious."  He also expressed some concern about Plaintiff's activities in advising students, even though Plaintiff never had been counseled or otherwise disciplined about such activities.  Nor had Plaintiff ever been assessed negatively on any performance appraisals about her advisement activities.

35.    In late Fall 2013, Plaintiff learned that her teaching duties and department roles were being reduced by Dr. Stevenson, affecting her professional standing.  Dr. Stevenson also removed departmental duties and committee responsibilities from Plaintiff.

36.    Those actions reduced Plaintiff's professional standing and hindered her tenure candidacy.

37.    On December 9, 2013, after Plaintiff had engaged in protected EEO activities, the Department of Social Work Faculty Review Committee voted not to recommend Plaintiff for tenure. Dr. Stevenson encouraged that non-recommendation and concurred with the decision. This decision was also supported by Dr. Schiele.

38.    Despite the obstacles erected by Dr. Stevenson and the DSW Faculty Review Committee, the BSU Appointments, Rank and Tenure Committee recommended that Plaintiff receive tenure. On July 1, 2014, Plaintiff was informed that she had received tenure.

39.    The hostile and offensive and abusive environment created and fostered by Dr. Stevenson after Plaintiff submitted the Assessment continued unabated from September 2013, until August 15, 2014, when Plaintiff was forced to resign her position at BSU.  That resignation was not voluntary and was a constructive discharge.

40.    Plaintiff was able to obtain employment as a professor at Coppin State University another constituent institution of the University System of Maryland.

41.    Dr. Stevenson has expressed disdain for BSU's policies, referring to them as "niggerish."

42.    Other tenure candidates that have not participated in protected EEO activities, have not had their tenure applications ("dossiers") criticized or have had their dossiers supported by Dr. Stevenson and the DSW Faculty Review Committee.  Nor have they been subjected to a campaign of intimidation by Dr. Stevenson, Dean Schiele and other BSU officials and administrators.

43.    In supporting DSW minority and gender students, Plaintiff was advocating that they receive equal treatment and not suffer discrimination from educational programs and activities that receive federal financial assistance.

44.    After Plaintiff engaged in protected activities for herself and on behalf of minority and female students in the DSW, she suffered adverse employment actions taken against her.

45.    But for Plaintiff's engaging in activities protected by Title VII and Title IX of the Civil Rights Act of 1964, the adverse actions described above would not have been taken by Defendant.

46.    Defendant's explanations for taking adverse actions are pretextual.

47.    Other DSW faculty members, including Velva Spriggs and Dr. Emory Perkins, opposed unlawful practices by Dr. Stevenson and similarly have suffered adverse employment actions.  After Dr. Perkins opposed unlawful employment practices engaged in by Dr. Stevenson, Dr. Stevenson said that "he would get his ass."  After Ms. Spriggs opposed unlawful employment practices engaged in by Dr. Stevenson, he did not review her teaching contract.

48.    The hostile and offensive workplace created and condoned by Defendant was severe and pervasive in nature and interfered with Plaintiff's ability to perform her job and has caused Plaintiff extreme emotional distress.

49.    Plaintiff was interfered with, restrained and retaliated against for exercising her rights under Title VII, Title IX and the FEPA.

50.    Defendant's actions created a hostile, offensive and abusive work environment because of Plaintiff's gender and her engaging in protected activities under Title VII, Title IX, the FEPA and Article 24.

51      As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this lawsuit.

52.     At all times relevant to this Complaint, Defendants, through funds allocated by the United States Department of Education and distributed annually by the Maryland Department of Education, has received substantial federal financial assistance.

**COUNT I**

**UNLAWFUL RETALIATION**
**IN VIOLATION OF § 704 OF TITLE VII**

53.      Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 52 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

54.     Between May 2013 and August 2014, Plaintiff took steps to oppose unlawful employment practices under Title VII by making formal and informal complaints and by participating in proceedings under Title VII.  These steps included making complaints to the BSU human resources office and speaking to Elizabeth Stachura about Dr. Stevenson's and Dean Schiele's retaliatory conduct.  At all relevant times, her supervisors were aware of such protected activities.

55.     After Plaintiff opposed practices made unlawful by Title VII and participated in activities protected under Title VII, Plaintiff endured unlawful retaliation from his supervisors, including receiving abusive and hostile treatment from her supervisors, subjecting her to a campaign of intimidation, including, but not limited to, efforts to sabotage Plaintiff's efforts to obtain tenure and culminating in Plaintiff's constructive discharge in August 2014.

56.     Because of Defendant's continued egregious retaliation campaign, beginning in August 2013 and continuing to and including August 15, 2014, Plaintiff has suffered immediate loss of

job status and prestige.

57.     Plaintiff suffered adverse actions, including, but not limited to, loss of status and prestige, sabotaging of her efforts to obtain tenure, sabotaging her efforts to obtain employment elsewhere and a vicious campaign of threats and intimidation by her supervisors.

58.     There was a strong causal connection between Plaintiff's protected activities and the adverse actions taken against her.

59.     But for Plaintiff's opposition to practices made unlawful under Title VII, the unlawful retaliation complained of above-would not have occurred.

60.     The reasons articulated by Defendant for its actions taken against Plaintiff are false and pretextual.

61.     Defendant's retaliatory actions were unlawful and in violation of § 704 of Title VII, 42 U.S.C. § 2000e-3.

62.     As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## COUNT II

### UNLAWFUL RETALIATION IN VIOLATION OF TITLE IX OF THE CIVIL RIGHTS ACT OF 1964

63.      Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 62 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

64.     Between May 2013 and August 2014, Plaintiff took steps to oppose unlawful discriminatory practices under Title IX directed toward female and gay students in the DSW by exposing discriminatory treatment by Dr. Stevenson and other BSU officials, including by

submitting the Assessment and making formal and informal complaints and by participating in proceedings under Title VII. At all relevant times, her supervisors were aware of such protected activities.

65. At all times relevant to the Complaint, BSU was an education program or activity that received federal assistance within the meaning of Title IX.

66. After Plaintiff opposed practices made unlawful by Title IX and participated in activities protected under Title IX by opposing discrimination against DSW female and gay students, Plaintiff endured unlawful retaliation from his supervisors, including receiving abusive and hostile treatment from her supervisors, subjecting her to a campaign of intimidation, including, but not limited to, efforts to sabotage Plaintiff's efforts to obtain tenure and culminating in Plaintiff's constructive discharge in August 2014.

67. Because of Defendant's continued egregious retaliation campaign, beginning in August 2013 and continuing to and including August 15, 2014, Plaintiff has suffered loss of job status and prestige.

68. Plaintiff suffered adverse actions, including, but not limited to, loss of status and prestige, sabotaging of her efforts to obtain tenure, sabotaging her effort to obtain employment elsewhere and a vicious campaign of threats and intimidation by her supervisors.

69. There was a strong causal connection between Plaintiff's protected activities and the adverse actions taken against her.

70. But for Plaintiff's opposition to discriminatory practices made unlawful under Title IX the unlawful retaliation complained of above-would not have occurred.

71. The reasons articulated by Defendant for its actions taken against Plaintiff are false and pretextual.

72.     Defendant's retaliatory actions were unlawful and in violation of Title IX of the Civil Rights Act of 1964, 20 U.S.C. § 1681(a).

73.     As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

**COUNT III**

**UNLAWFUL RETALIATION
IN VIOLATION OF THE MARYLAND FEPA**

74.      Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 73 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

75.     Between May 2013 and August 2014, Plaintiff took steps to oppose unlawful employment practices under the FEPA by making formal and informal complaints and by participating in proceedings under the FEPA.  These steps included making complaints to the BSU human resources office and speaking to Elizabeth Stachura about Dr. Stevenson's and Dean Schiele's retaliatory conduct. At all relevant times, her supervisors were aware of such protected activities.

76.     After Plaintiff opposed practices made unlawful by FEPA and participated in activities protected under FEPA, Plaintiff endured unlawful retaliation from his supervisors, including receiving abusive and hostile treatment from her supervisors, subjecting her to a campaign of intimidation, including, but not limited to, efforts to sabotage Plaintiff's efforts to obtain tenure and culminating in Plaintiff's constructive discharge in August 2014.

77.     Because of Defendant's continued egregious retaliation campaign, beginning in August 2013 and continuing to and including August 15, 2014, Plaintiff has suffered loss of job status and prestige.

78. Plaintiff suffered adverse actions, including, but not limited to, loss of status and prestige, sabotaging of her efforts to obtain tenure and a vicious campaign of threats and intimidation by her supervisors.

79. There was a strong causal connection between Plaintiff's protected activities and the adverse actions taken against her.

80. But for Plaintiff's opposition to practices made unlawful under the FEPA, the unlawful retaliation complained of above-would not have occurred.

81. The reasons articulated by Defendant for its actions taken against Plaintiff are false and pretextual.

82. Defendant's retaliatory actions were unlawful and in violation of the FEPA, Md. Code Ann. State Gov't. Art. § 20-606(f).

83. As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Honorable Court grant him the following relief, namely:

(i) That this Court determine that the employment practices complained of in this Complaint are unlawful in that they violate the Title VII, Title IX and the FEPA;

(ii) That Defendant pay Plaintiff the sum of $300,000 for her actual and compensatory damages and any and all equitable relief; and

(iii) That Defendant pay Plaintiff's costs and expenses and reasonable attorney's fees incurred in prosecuting with this action.

**PLAINTIFF DEMANDS A JURY TRIAL.**

DATED:  MAY 5, 2016.

Respectfully submitted,


_____/S/_____
Nathaniel D. Johnson  (MD#14729)
Attorney for Plaintiff
The Johnson Law Office
10665 Stanhaven Place, Suite 3101
White Plains, Maryland 20695
(301) 645-9103 (Phone)/888-492-9434 (Fax)
ndjesquire@gmail.com

15