IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **KESSLYN BRADE STENNIS,** | * | |
| Plaintiff, | * | |
| v. | * | Case No. RWT 16-cv-1362 |
| **BOWIE STATE UNIVERSITY,** | * | |
| Defendant. | * | |

## MEMORANDUM OPINION

On May 5, 2016, Kesslyn Brade Stennis ("Brade Stennis"), a former professor at Bowie State University ("Bowie State"), filed a Complaint alleging unlawful retaliation under Title VII, Title IX, and Maryland's Fair Employment Practices Act ("FEPA" or "Title 20"). She alleged that her supervisor, Dr. Andre Stevenson, retaliated against her after she voiced the concerns of certain students that they were being discriminated against on the basis of their gender and sexual orientation, and that these allegedly retaliatory acts negatively impacted her tenure application and professional standing. On October 14, 2016, Bowie State moved to dismiss for failure to state a claim upon which relief can be granted and for failure to exhaust administrative remedies. ECF No. 6. A motions hearing was held on January 12, 2017. ECF No. 14. For the reasons discussed below, the motion to dismiss will be granted.

### FACTS

Between February 2009 and August 2014, Brade Stennis was an Assistant Professor in the Department of Social Work ("DSW"), within Bowie State's College of Professional Studies. ECF No. 1 ¶ 11. Her immediate supervisor was Dr. Andre Stevenson, chair of the DSW. *Id.* ¶ 12. In Spring 2013, Brade Stennis relayed to Dr. Stevenson that certain students felt they

were being unfairly treated by certain members of the faculty. *Id.* ¶ 17. At Dr. Stevenson's direction, Brade Stennis spoke with members of the Social Work Club and learned that some students felt that Dr. Stevenson was discriminating against them on the basis of their gender and sexual orientation. *Id.* ¶¶ 17-18. In Summer 2013, Brade Stennis typed up a report and assessment of Dr. Stevenson in which she described the concerns expressed during the meeting of the Social Work Club, and she forwarded this Assessment to Dr. Stevenson. *Id.* ¶¶ 20-22.

After she submitted this Assessment, Dr. Stevenson reacted "extremely negatively." ECF No. 1 ¶ 22. Brade Stennis began receiving "threatening and intimidating" e-mails from Dr. Stevenson, and was questioned by him and the Dean of the College of Professional Studies, Dr. Jerome Schiele. *Id.* ¶ 23-24. At this meeting, her "credibility was questioned." *Id.* ¶ 24. Brade Stennis then met with Elizabeth Stachura, a human resources officer, about her meeting with Dr. Stevenson and Dr. Schiele, but Ms. Stachura took no action. *Id.* ¶ 25. On October 11, 2013, Brade Stennis submitted her tenure application. *Id.* ¶ 26. Dr. Stevenson criticized her application's organization and "erect[ed] barriers to her application" by "raising inaccurate claims about her professionalism and her advisement of students." *Id.* ¶¶ 26-30. Brade Stennis then received a "disturbing and disrespectful e-mail" from Dr. Stevenson about her purported mis-advisement of students—an e-mail that allegedly "confirmed Dr. Stevenson's retaliatory animus." *Id.* ¶¶ 29-30. From this e-mail, it "appeared that Dr. Stevenson's concerns about [mis]advisement were baseless." *Id.* ¶ 30. Brade Stennis then again met with Ms. Stachura to express her concern about the "mounting paper trail" that was accumulating after she relayed the concerns of gay and female students. *Id.* ¶¶ 29-31. In late Fall 2013, Brade Stennis "learned that her teaching duties and department roles were being reduced by

Dr. Stevenson, affecting her professional standing." *Id.* ¶ 35.  He also "removed departmental duties and committee responsibilities from Plaintiff." *Id.*

On December 9, 2013, the DSW Faculty Review Committee voted not to recommend Brade Stennis for tenure—a decision supported by Dr. Stevenson and Dean Schiele. *Id.* ¶ 37. Nevertheless, on July 1, 2014, Brade Stennis was informed that she had received tenure. *Id.* ¶ 38.  Subsequent to her receiving tenure, the "hostile and offensive and abusive environment" created by Dr. Stevenson continued until August 15, 2014, when Brade Stennis was "forced to resign her position at BSU," which Brade Stennis alleged amounted to a constructive discharge. *Id.* ¶ 39.  Brade Stennis then obtained employment as a professor at Coppin State University, another institution within the University System of Maryland. *Id.* ¶ 40.

Brade Stennis filed an Intake Questionnaire with the Equal Employment Opportunity Commission ("EEOC") alleging unlawful retaliation on March 11, 2014.  ECF No. 12 Ex. 1.  On March 17, 2014, Brade Stennis' attorney sent a letter to Bowie State advising that Brade Stennis was engaging in EEO protected activities and that he was authorized to file a charge on her behalf.  ECF No. 12 Ex. 1.[1]  Brade Stennis filed her formal charge of retaliation on August 20, 2014.  ECF No. 6 Ex. 2, EEOC Charge No. 531-2014-01210.  Bowie State received notice of this charge on September 24, 2014.  ECF No. 13 Ex. A.

On May 5, 2016, Brade Stennis filed a Complaint alleging unlawful retaliation in violation of § 704 of Title VII, 42 U.S.C. § 2000e-3 (Count I), unlawful retaliation in violation of

---

[1] Although the Intake Questionnaire was not attached to Brade Stennis' Complaint, as the court in *Scott v. Md. Dep't of Pub. Safety & Corr. Servs.*, Civ. No. CCB-14-3695, 2015 WL 5836917 (D. Md. Oct. 2, 2015) notes, "[o]ther courts in this district have considered an EEOC intake questionnaire attached to a plaintiff's opposition in reviewing a motion to dismiss under Rule 12(b)(6). *Id.* at *3 n.1.  The letter from Brade Stennis' attorney, by contrast, is not properly considered by this Court because it is not "integral to and explicitly relied on in the complaint." *See Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011).  An "integral document is a document that by its very existence, and not the mere information it contains, gives rise to the legal rights asserted." *Id.*  While the EEOC charge and its related documents are integral to the Complaint, a letter from Brade Stennis' counsel stating his intention to file a charge in the future is not integral and not properly considered by the Court in ruling on a Rule 12(b)(6) motion.

Title IX of the Civil Rights Act, 20 U.S.C. § 1681(a) (Count II), and unlawful retaliation in violation of the Maryland Fair Employment Practices Act ("FEPA"), Md. Code Ann. State Gov't. Art. § 20-606(f) ("Title 20") (Count III).  ECF No. 1.  On October 14, 2016, Bowie State filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that (1) Counts I and III were procedurally defaulted, (2) Brade Stennis did not adequately allege that she engaged in protected activity with regard to Counts I and III, and (3) she did not adequately allege that she suffered an adverse employment action for all three counts.  ECF No. 6.

## STANDARD OF REVIEW

The purpose of a motion to dismiss under Rule 12(b)(6) is "to test the sufficiency of a complaint."  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  The Supreme Court has further articulated the standard applicable to Rule 12(b)(6) motions.  *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  *Twombly*, 550 U.S. at 556 n.3.  To survive a motion to dismiss, a complaint must put forth "plausible claim[s] for relief."  *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).  While the court "must take all factual allegations as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678 (internal citation and quotation marks omitted).  And "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

**DISCUSSION**

I.  **Procedural Default**

   a.  **Count I**

Bowie State alleges that Count I must be dismissed because the discrete acts of retaliation alleged in the Complaint occurred more than 300 days before Brade Stennis filed her charge with the EEOC on August 20, 2014.  ECF No. 6 at 14 (citing *Mezu v. Morgan State Univ.*, 264 F. Supp. 2d 292, 294 (D. Md. 2003), *aff'd*, 75 Fed. App'x 910 (4th Cir. 2003) ("In Maryland, a deferral state, a Title VII charge of discrimination must be filed with the EEOC within 300 days of the alleged discriminatory conduct.")).  However, as Brade Stennis explains, the pertinent date is March 11, 2014, when she filed her Intake Questionnaire.  ECF No. 12 at 19-20.  An Intake Questionnaire satisfies the requirements of an EEOC charge when "the EEOC receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of."  *Scott v. Md. Dep't of Pub. Safety Servs.*, Civ No. CCB-14-3695, 2015 WL 5836917, at *4 (D. Md. Oct. 2, 2015) (holding that the intake questionnaire submitted to EEOC was sufficient to serve as a charge for purposes of establishing limitations period).  The filing must also "be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee."  *Id.* (citing *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008)).  Like in *Scott,* Brade Stennis' Intake Questionnaire identified the parties, described the allegedly discriminatory actions, and indicated that Brade Stennis wanted to file a charge of discrimination.

That the Intake Questionnaire was not verified is of no consequence, as the later-filed verified EEOC charge dates back to the date the Intake Questionnaire was filed.  *Scott*, 2015 WL

5836917, at *5 ("Where a plaintiff's intake questionnaire constitutes a charge under *Holowecki* but is unverified, the verification of a later-filed formal charge of discrimination can relate back to cure the deficiency."). Because the date of Brade Stennis' verified EEOC charge relates back to March 11, 2014, any retaliatory actions that occurred in the 300 days prior to this date are timely. Therefore, the Court finds that Brade Stennis' claims in Count I are not procedurally defaulted.

### b. Count III

Bowie State also argues that Count III must be dismissed because claims brought under FEPA must be brought "within two years after the alleged unlawful employment practice occurred." Md. Code Ann., State Gov't § 20-1013(a)(3). "Ordinarily, a defense based on the statute of limitations must be raised by the defendant through an affirmative defense," and therefore a "motion to dismiss filed under Federal Rule of Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). However, in the "relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Id.*

Bowie State argues that because Brade Stennis filed her Complaint on May 5, 2016, only allegations occurring on or after May 5, 2014, are actionable. ECF No. 6 at 16. Brade Stennis counters that because her claims were subject to a mandatory exhaustion of administrative remedies requirement, the two-year statute of limitations period should have been tolled pending a determination from the administrative tribunal. ECF No. 12 at 22-23. But as Bowie State explains, Judge Hollander of this Court rejected a substantially similar argument in *McCray v. Md. Dep't of Transp.*, Civ. No. ELH-11-3732, 2014 WL 4660793, at *14

(D. Md. Sept. 16, 2014), *aff'd*, 2016 WL 6471731 (4th Cir. Nov. 2, 2016) (rejecting argument that two-year limitations provision did not apply when claims were subject to administrative exhaustion requirement because administrative exhaustion requirement "is in addition to the requirement" that civil actions be filed within two years of alleged unlawful employment practice). Indeed, § 20-1013 is clear that a complainant may file suit only if she "initially filed a timely administrative charge or a complaint under federal, State, or local law" *and* "the civil action is filed within 2 years after the alleged unlawful employment practice occurred." The only discrete allegations in the Complaint occurring after May 5, 2014, are that Brade Stennis received tenure on July 1, 2014, and that she was constructively discharged on August 15, 2014. All other allegations under Title 20 are untimely.

**II.     Brade Stennis Failed to State a Claim Upon Which Relief Can Be Granted for Counts I and III.**

To state a *prima facie* case of retaliation under Title VII, Title IX, or Title 20, an employee must allege and prove that "(1) he engaged in a protected activity; (2) the employer took an adverse employment action against him; and (3) a causal connection existed between the protected activity and the asserted adverse action." *Adams v. Giant Food, Inc.*, 225 F. Supp. 2d 600, 605 (D. Md. 2002) (reciting elements for retaliation claim under Title VII); *Doe v. Salisbury Univ.*, 107 F. Supp. 3d 481, 489 (D. Md. 2015) (reciting same elements for retaliation claim under Title IX); *Chappell v. S. Md. Hosp., Inc.*, 578 A.2d 766, 773 (Md. 1990) (applying same elements to retaliation claim under former Art. 49B, § 16(f), from which § 20-606 is derived without substantive change). Title 20 is the "state law analogue of Title VII and its interpretation is guided by federal cases interpreting Title VII." *Finkle v. Howard Cnty., Md.*, 12 F. Supp. 3d 780, 784 (D. Md. 2014) (citing *Haas v. Lockheed Martin Corp.*, 914 A.2d 735, 742 (Md. 2007)).

Even assuming, *arguendo*, that Brade Stennis' claims in Count III are timely, she has failed to allege that she engaged in any protected activity under Counts I and III.

### a. Brade Stennis Failed to State a Causal Connection Between Protected Participation Activity and Any Adverse Employment Action.

Bowie State moved to dismiss Counts I and III on the additional grounds that the actions forming the basis of Brade Stennis' retaliation claim do not amount to protected activities under Title VII or Title 20. Protected activities "fall into two distinct categories: participation or opposition." *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998). Participation activities are those outlined in the statute: "(1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing under Title VII." *Id.* Bowie State argues that Brade Stennis did not engage in protected participation activity until she filed her EEOC charge on August 20, 2014, five days after she resigned. ECF No. 6 at 7. Brade Stennis, on the other hand, argues that her participation activities began as early as September 2013, when she first met with the Bowie State human resources officer about her concerns. ECF No. 12 at 12. Additionally, in March 2014, she filed the Intake Questionnaire which detailed the retaliation she experienced and indicated her intention to pursue an administrative charge. *Id.*

Brade Stennis' Fall 2013 meetings with Ms. Stachura do not fall under the scope of activities protected under the participation clause. As Judge Chasanow of this Court has concluded, "the EEOC process must have commenced in order for an employee to claim protection under the participation clause." *Winslow v. Locke*, Civ. No. DKC-09-0071, 2010 WL 1141200, at *6-7 (D. Md. Mar. 22, 2010) (collecting cases that "held that the participation clause has no application in the context of an internal investigation where an EEOC complaint has not been filed."). The cases cited by Brade Stennis in support of her argument that she need not have

8

filed a charge with the EEOC in order for her activities to fall under the participation clause are unavailing. In *Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997), for example, the court disagreed with the district court's conclusion that meeting with an EEO counselor was not protected activity, concluding that "Hashimoto *did more here than merely complain to a superior*. Rather, she contacted an EEO counselor about her concerns" (emphasis added). Indeed, in all the cases cited by Brade Stennis, the plaintiff had actually contacted an EEO counselor and had not simply met with a superior or a human resources officer. Because there had been no formal or informal initiation of an EEOC charge, or even any contact with an EEO counselor, Brade Stennis' meetings with Ms. Stachura do not fall under the scope of the participation clause.

Brade Stennis' filing of the Intake Questionnaire on March 11, 2014, by contrast, was protected activity. However, in her Complaint she did not allege that Bowie State received notice of the filing of this document prior to any of the alleged adverse employment actions. As Bowie State points out, the Notice of Charge of Discrimination was not sent until September 24, 2014. ECF No. 13 Ex. A. Most importantly, the only discrete actions that she alleged took place after March 11, 2014, were that she received tenure on July 1, 2014, and that her August 15, 2014 resignation amounted to a constructive discharge—a legal conclusion. All of the other alleged instances of retaliation took place before she filed the Intake Questionnaire and thus cannot have been based on her participation in the EEOC process. *See Hall v. Greystar Mgmt. Servs., L.P.*, 637 Fed. App'x 93, 98 (4th Cir. 2016) ("Retaliatory conduct, by its very nature, must come *after* the protected activity."). Brade Stennis therefore has not alleged the causation element necessary for an unlawful retaliation claim based on participation in an EEOC proceeding or investigation.

### b. Brade Stennis Failed to Allege that She Engaged in Opposition Activity.

Brade Stennis also failed to adequately allege that her activity was covered under the opposition clause. Opposition activity includes "utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Laughlin*, 149 F.3d at 259. "Employees engage in protected oppositional activity when, inter alia, they 'complain to their superiors about suspected violations of Title VII.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (citation omitted). While a plaintiff bringing a claim under the opposition clause "need not establish that the employment practice he opposed in fact violated Title VII," the plaintiff must "at a minimum have held a reasonable good faith belief at the time he opposed an employment practice that the practice was violative of Title VII." *Adams*, 225 F. Supp. 2d at 606. Protected activity "does not include opposition to 'all unlawful practices' or 'practices the employee simply thinks are somehow unfair"; the employee must have 'actually opposed employment practices made unlawful by the [antidiscrimination statute].'" *Sara Kay Ruffner v. MD OMG EMP LLC*, Civ. No. WDQ-11-1880, 2012 WL 3542019 at *3 (D. Md. 2012).

Here, the activity that Brade Stennis opposed was alleged discrimination against homosexual and female students by Dr. Stevenson and other members of the Bowie State faculty. She did not oppose a perceived unlawful employment practice. Because Title VII and Title 20 protect against unlawful *employment* practices, it was not reasonable to believe that perceived discrimination against *students*—who are clearly not employees—violated these statutes. *See Harmon v. Cumberland Cnty. Bd. of Educ.*, 186 F. Supp. 3d 500, 506 (E.D.N.C. 2016), *aff'd*, 2016 WL 5956694 (4th Cir. Oct. 14, 2016) ("As plaintiff's oppositional activity concerned disability discrimination [against students], plaintiff could not have reasonably believed that she was opposing an employment practice made unlawful by

Title VII"). Therefore, Brade Stennis' written assessment and meetings with Ms. Stachura cannot be considered oppositional activity, as she was not opposing a practice prohibited by Title VII or Title 20.

### III. Brade Stennis Failed to Allege that She Suffered an Adverse Employment Action in Counts I, II, and III.

Even if Brade Stennis had adequately alleged that she engaged in protected activity under Counts I and III, she failed to allege that she suffered an adverse employment action in support of any of her claims. As the Supreme Court has made clear, Title VII "does not set forth 'a general civility code for the American workplace.'" *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). As such, the antiretaliation provision "protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington Northern*, 548 U.S. at 67 (2006). In order to be considered "adverse," the employment action must be one that a "reasonable employee would have found. . .materially adverse." *Id.* at 68; *see also Doe v. Salisbury Univ.*, 123 F. Supp.3d 748, 769 (D. Md. 2015) ("federal courts across the country have adopted *Burlington*'s material adversity test in Title IX retaliation claims"). This means that the action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern*, 548 U.S. at 68 (citation and quotation marks omitted). The "material adversity" requirement is necessary to "separate significant from trivial harms," and the "significance of any given act of retaliation will often depend upon the particular circumstances." *Id.* at 68-69. The Fourth Circuit has further clarified that *Burlington Northern* "explains that while factors other than the terms and conditions of employment may be examined in determining whether an adverse employment action occurred,

11

this is still a heavy burden for the plaintiff: the alleged adverse action must be *material*." *Csicsmann v. Sallada*, 211 Fed. App'x 163, 168 (4th Cir. 2006) (unpublished).

The adverse employment actions that Brade Stennis alleged include that (1) Dr. Stevenson acted "extremely hostilely" toward her, (2) he removed her as faculty advisor for the Social Work Club, (3) he sent her "threatening and intimidating e-mails," (4) he "erect[ed] barriers to Plaintiff's tenure application," and (5) he "removed departmental duties and committee responsibilities from Plaintiff," which all had the effect of "reduc[ing] Plaintiff's professional standing and hinder[ing] her tenure candidacy." ECF No. 1 ¶¶ 22-25, 28-30, 35-37. But she ultimately received tenure, and, subsequent to the tenure decision, Brade Stennis alleged only that "the hostile and offensive and abusive environment created and fostered by Dr. Stevenson" continued until August 15, 2014, when "Plaintiff was forced to resign her position at BSU." *Id.* ¶ 39. She alleges that this amounted to a "constructive discharge." *Id.*

The vague references to threatening and intimidating meetings and emails do not sufficiently allege that an adverse employment action was taken against her. *See Thorn v. Sebelius*, 766 F. Supp. 2d 585, 603 (D. Md. 2011), *aff'd*, 465 Fed. App'x 274 (4th Cir. 2012) (holding that retaliatory emails, a change in plaintiff's tour of duty, an instruction to an employee not to work with plaintiff, unwarranted reprimands, and exclusion from a work project were not actionable adverse employment actions); *Cepada v. Bd. of Educ. of Baltimore Cnty.*, 814 F. Supp. 2d 500, 515 (D. Md. 2011) (plaintiff's allegations that "he was yelled at for complaining about his discriminatory treatment" and that "the school threatened to officially reprimand him if he sent more complaining e-mails to administrators" were not materially adverse employment actions); *Tawwaab v. Va. Linen Serv., Inc.*, 729 F. Supp. 2d 757, 784 (D. Md. 2010) (supervisor's "demeaning and belittling remarks," supervisor undermining

plaintiff's authority in front of his subordinates, insistence that he "needlessly perform arbitrary and time-consuming tasks," and failure to promote plaintiff were not adverse employment actions). Like in *Thorn*, the "threatening and intimidating emails," allegedly unwarranted criticisms of her tenure dossier and advisement of students, and Dr. Stevenson's non-recommendation for tenure "amount to nothing more than unactionable 'personal slights.'" *See Thorn*, 766 F. Supp. 2d at 603.

While the removal of duties and responsibilities can, in some circumstances, amount to an adverse employment action, Brade Stennis failed to allege that these actions caused a significant injury or harm such that a reasonable employee would be dissuaded from filing a charge of discrimination.[2] *Compare Jones-Davidson v. Prince George's Cnty. Comm. Coll.*, 2013 WL 5964463, at *4 (D. Md. Nov. 7, 2013) (plaintiff did not allege adverse employment action when she began receiving less challenging assignments or no assignments at all because she had "not plausibly alleged that Defendant's actions impeded her ability to advance, or had any tangible impact on her career") *with Edwards v. U.S. E.P.A.*, 456 F. Supp. 2d 72, 87 (D.D.C. 2006) ("[P]laintiff's allegation that his workload was reduced and that he was stripped of specific responsibilities suffices to show that he suffered an adverse employment action"). Indeed, Brade Stennis' Complaint and Response in Opposition focus on the effect that the reduction of responsibilities had on her tenure application. *See, e.g.*, ECF No. 1 ¶ 35-36 (removal of departmental duties and committee responsibilities "reduced Plaintiff's professional standing and hindered her tenure candidacy"); ECF No. 12 at 18 ("Plaintiff has demonstrated

---

[2] Brade Stennis claims in a footnote that "Only after Plaintiff's counsel, on March 17, 2014, put the University on notice of Plaintiff's protected activities in March 2014, was Plaintiff's tenure application approved without Department support." ECF No. 12 at 17 n.2. As explained above, this letter cannot properly be considered by the Court in ruling on this motion. However, it is worth noting that this seems to seriously undermine her argument that she was subject to any adverse employment action. If she received tenure after notifying the University of her participation in EEOC activities, a reasonable employee would conclude that making a charge of discrimination would help, rather than hinder, one's tenure application and would not be dissuaded from filing such a charge.

that she had duties and responsibilities removed after submitting the assessment, resulting in a loss of prestige, was counseled about phantom mis-advisement and, most significantly, experienced Stevenson determined [sic] efforts to thwart her tenure application."). But she ultimately received tenure, and when she left her job at Bowie State, remained in high enough professional standing to obtain another teaching position at Coppin State University. ECF No. 1 ¶ 38, 40. Given that she received tenure and ultimately was able to obtain employment at another university, Brade Stennis has not alleged that any employment actions taken against her were materially adverse, such that a reasonable employee would be dissuaded from filing a charge of discrimination.

Brade Stennis' Complaint also fell short of stating a claim for constructive discharge. "Constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job." *Blakes v. City of Hyattsville*, 909 F. Supp. 2d 431, 438 (D. Md. 2012) (citation omitted). "Constructive discharge claims are held to a high standard, and even truly awful working conditions may not rise to the level of constructive discharge." *Id.* ("[D]issatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not intolerable as to compel a reasonable person to resign."). Brade Stennis' Complaint contains nothing to indicate that Bowie State deliberately made her working conditions so intolerable that she was forced to resign her position—on the contrary, a month and a half before her resignation, she was granted tenure. This falls far short of meeting the "high standard" necessary to allege constructive discharge.

## CONCLUSION

For the reasons discussed above, Defendant's Motion to Dismiss [ECF No. 6] will be granted and Plaintiff's Complaint [ECF No. 1] will be dismissed. A separate Order follows.


<u>Date</u>:  February 16, 2017                                   <u>            /s/            </u>
                                                              ROGER W. TITUS
                                                      UNITED STATES DISTRICT JUDGE